TITLE GUARANTEE AND TRUST COMPANY, Appellant, *v.* MORTGAGE COMMISSION OF THE STATE OF NEW YORK, Respondent.

Argued January 7, 1937; decided April 20, 1937.

*Timothy N. Pfeiffer, Sinclair Hamilton, Wilber Stamm-*
*ler* and *Joseph V. McKee* for appellant. The intention

that the plaintiff share *pro rata* with the other certificate holders is manifest. Intention is always the decisive test. (*Granger* v. *Crouch*, 86 N. Y. 494; *Granger* v. *Craig*, 96 N. Y. 648; *Perillo* v. *Zunino*, 259 N. Y. 21; *Matter of Lawyers Mortgage Co.*, 151 Misc. Rep. 744; 242 App. Div. 617; 265 N. Y. 508; *Kelly* v. *Middlesex Title Guarantee & Trust Co.*, 115 N. J. Eq. 592; 116 N. J. Eq. 574.) The relationship of the plaintiff and its assignee-certificate holders shows that *pro rata* distribution of their respective aliquot shares between them was intended. (*Matter of People*, 264 N. Y. 69; *President of Manhattan Co.* v. *Prudence Co.*, 266 N. Y. 202; *Fullerton* v. *National B. & T. Ins. Co.*, 100 N. Y. 76; *Matter of Prudence Co.*, 82 Fed. Rep. [2d] 755; *Symmers* v. *Carroll*, 207 N. Y. 632; *Granger* v. *Crouch*, 86 N. Y. 494; *Lowenfeld* v. *Wimpie*, 139 App. Div. 617; 203 N. Y. 646; *United States* v. *Home Title Ins. Co.*, 285 U. S. 191; *Kelly* v. *Middlesex Title Guarantee & Trust Co.*, 115 N. J. Eq. 592; 116 N. J. Eq. 574; *E. T. C. Corp.* v. *Title Guarantee & Trust Co.*, 271 N. Y. 124.) Intention is the decisive test and, in the absence of a contrary intention, the *pro rata* rule is applied. (*Domeyer* v. *O'Connell*, 364 Ill. 467; *Granger* v. *Crouch*, 86 N. Y. 494; *Granger* v. *Craig*, 96 N. Y. 648; *Perillo* v. *Zunino*, 259 N. Y. 21; *Matter of Preston*, 54 Hun, 10; *Orleans County Nat. Bank* v. *Moore*, 112 N. Y. 543; *Bridenbecker* v. *Lowell*, 32 Barb. 9; *Matter of Georgi*, 21 Misc. Rep. 419; *President of Manhattan Co.* v. *Prudence Co.*, 266 N. Y. 202; *Matter of People* [*Title & Mortgage Guarantee Co.*], 264 N. Y. 69; *Matter of Lawyers Mortgage Co.* [*Borg*], 151 Misc. Rep. 744; 242 App. Div. 617; 265 N. Y. 508.) In any event, the plaintiff should share *pro rata* with other certificate holders on all certificates repurchased by it from the holders thereof at full face value. (*Ryan* v. *Staples*, 78 Fed. Rep. 563; *Matter of Fidelity Union Title & Mortgage Guarantee Co.*, 118 N. J. Eq. 155; *English* v. *Carney*, 25 Mich. 178; *Goring's Executrix* v. *Shreve*, 37 Ky. 64; *American Brake Shoe &*

*Foundry Co.* v. *New York R. Co.*, 277 Fed. Rep. 261; *Westinghouse Electric & Mfg. Co.* v. *Brooklyn R. T. Co.*, 288 Fed. Rep. 221.) The statement as agreed upon by the parties is conclusive and binding. (*New York Tel. Co.* v. *Siegel-Cooper Co.*, 202 N. Y. 502; *Marx* v. *Brogan*, 188 N. Y. 431; *Bradley* v. *Crane*, 201 N. Y. 14; *People* v. *Hewson*, 224 N. Y. 136; *Fearing* v. *Irwin*, 55 N. Y. 486,)

*Maurice Finkelstein, Frieda B. Hennock, John J. Clarke* and *Benjamin J. Rabin* for respondent. The contract between the parties contains a clear implication that the certificate holders are entitled to priority. (*Gillet* v. *Bank of America*, 160 N. Y. 549; *Moran* v. *Standard Oil Co.*, 211 N. Y. 187; *American Surety Co.* v. *Pauly*, 170 U. S. 133.) In the absence of any direct expression of intention in the contract between the parties, the certificate holders are entitled to priority. The assignee of a part interest in a bond and mortgage is entitled to priority over the assignor. (*Fullerton* v. *National B. & T. Ins. Co.*, 100 N. Y. 76; *Matter of New York Title & Mortgage Co.*, 272 N. Y. 556; *Matter of Lawyers Mortgage Co.*, 272 N. Y. 554.) The natural equities reinforce the conclusion that the certificate holders are entitled to priority. (*Matter of Balfe*, 152 Misc. Rep. 739.) The appellant is a trustee for the certificate holders, and, as such, its interest in the trust *res* is subordinate to that of the other beneficiaries. (*Lowenfeld* v. *Wimpie*, 139 App. Div. 617; 203 N. Y. 646; *E. T. C. Corp.* v. *Title Guarantee & Trust Co.*, 271 N. Y. 124; *Chicago, M. & St. P. Ry. Co.*, v. *Des Moines*, 254 U. S. 196; *Matter of Burr*, 143 Misc. Rep. 877; 239 App. Div. 774; *Earle* v. *Earle*, 93 N. Y. 104; *Matter of Ungrich*, 201 N. Y. 415.)

HUBBS, J. The Title Guarantee and Trust Company, appellant, was engaged in the business of banking, title insurance and mortgage loans. It owned two mortgages and sold participating certificates therein. The Bond and Mortgage Guarantee Company guaranteed the

mortgages, both as to principal and interest, to appellant and all certificate holders. The certificates were in the following form:

"Title Guarantee and Trust Company, hereinafter called 'the Company,' has received from the sum of $ for the purchase of and hereby assigns to the purchaser an undivided share equal to that amount, with interest thereon at the rate of % per annum, in the bond of for $ due 19 and in the first mortgage securing the same, covering

"Interest days 1st and 1st.

"This bond and Mortgage, together with the policy of the Bond and Mortgage Guarantee Company, guaranteeing to holders of this and similar certificates payment of principal and interest, are held by the Company as depositary and agent for the holders of such certificates which shall never aggregate more than the amount of principal remaining unpaid on said bond and mortgage, upon the following terms and conditions which are agreed to by the holder of this certificate.

"1. The Company holds and shall continue to hold said bond and mortgage, said policy of Bond and Mortgage Guarantee Company and the other instruments and evidences of title relating thereto for the benefit of the purchaser and any other persons interested therein.

"2. The Company, on receipt of the interest and principal of said bond and mortgage, as required therein, shall distribute the same among the persons entitled thereto. If payments not so required are made, certificates for the same amount will be called in and paid off.

"3. The Company shall have full power to take any action it may deem necessary or desirable in order to enforce any of the provisions of said bond and mortgage and to protect the mortgage security.

"4. The Company may for its own corporate account be the holder or pledgee of similar shares in said bond and mortgage.

"5. The Company may take up and cancel this certificate at any time on thirty days' notice in writing to the purchaser and payment at its office, 176 Broadway, New York, of the amount then owing to the purchaser for principal and interest.

"6. This certificate is not negotiable. The only way that the interest of the purchaser can be transferred is by the surrender of this certificate to the Company duly assigned and the issuing of another certificate to the transferee."

After certain certificates were issued, appellant repurchased some which had been previously sold and canceled them. Thereafter, it issued new certificates to itself for the amount of the canceled certificates and the balance of the mortgages over and above the amount evidenced by the certificates which were outstanding. The certificates were issued by appellant to itself "for the sole purpose of evidencing the amount of the interest which the title company at that time had in the said mortgage."

The Bond and Mortgage Guarantee Company is in rehabilitation, pursuant to the provisions of article 11 of the Insurance Law (Cons. Laws, ch. 28). The respondent Mortgage Commission, pursuant to the provisions of chapter 19 of the Laws of 1935, as amended, took over the servicing of the mortgages in which the appellant had issued participating certificates which were guaranteed by the Bond and Mortgage Guarantee Company.

The servicing of those mortgages involved the collection of interest and the distribution of the same to the persons entitled thereto. The amount collected upon those mortgages as interest aggregated less than the amount of interest due and payable to certificate holders other than appellant. It paid to the certificate holders other than the appellant their *pro rata* share of the interest collected, assuming that appellant was entitled to an equal distribution on the amount of the interest which it retained in the mortgages. It retained such balance pending a judicial determination of the rights of the parties.

The questions involved were submitted to the Appellate Division on an agreed statement of facts in the following form:

A. In respect to said mortgage of $295,500:

" 1. Is the Title Company now entitled to receive from the Mortgage Commission the said sum of $525.96?

" 2. Is the Title Company entitled to receive from the Mortgage Commission any payment of interest on said certificate No. 161320 for $156,550, at a time when there remains unpaid any sum due and owing to certificate holders other than the Title Company?"

B. In respect to said mortgage of $300,000:

" 1. Is the Title Company now entitled to receive from the Mortgage Commission the said sum of $488.91?

" 2. Is the Title Company entitled to receive from the Mortgage Commission any payment of interest on said certificate No. 161569 for $21,000, at a time when there remains unpaid any sum due and owing to certificate holders other than the Title Company?"

The Appellate Division has answered the four questions in the negative and has rendered judgment in favor of respondent upon the ground that the certificates held by appellant do not represent similar shares within the meaning of provision 4 of the certificate and that the natural equities of the stiuation are with respondent.

This court has already decided with reference to similar securities issued by a corporation guaranteeing payment of its own issues that, in the absence of contractual provisions to the contrary, the issuing corporation, where a reservation of the right to purchase for its own account securities of the particular issue was specified in the agreement, may share in proceeds of assets pledged as collateral to the securities issued by it only to the extent of uncanceled certificates held by it. The reason for not permitting the issuing companies to share as owner of the part of the mortgage not assigned was that as between the company and the certificate holders the relation of debtor and creditor existed growing out of the guaranty

of payment issued by it. (*Mechanics' Bank* v. *Bank of Niagara*, 9 Wend. 410; *Matter of Lawyers Mortgage Co.* [*545 West End Ave.*], 157 Misc. Rep. 813; affd., 248 App. Div. 715; affd., 272 N. Y. 554; *Matter of Lawyers Mortgage Co.* [*1399–1413 Madison Ave.*], 151 Misc. Rep. 744; affd., 242 App. Div. 617; leave to appeal denied, 242 App. Div. 629; leave to appeal denied, 265 N. Y. 508.)

In the case at bar the relation of debtor and creditor does not exist.

We are now required to consider participating certificates issued by a corporation which instead of itself guaranteeing payment, procures a guaranty from another corporation. Respondent contends that as certificates were issued for certain specific amounts representing undivided shares of the total face amount of the mortgage instead of for fractional parts of the mortgage debt, the certificate does not assign to the certificate holder a specific percentage of the bond and mortgage or any aliquot portion thereof, but merely assigns a certain dollar interest therein, and that it follows that it was clearly intended that the certificate holder should receive the amount represented by his certificate before the assignor should receive anything out of the property in question. We are of the opinion that the certificate holders became tenants in common, each entitled to an aliquot share of the mortgage referred to in the certificate. Such is the purport of the opinion in *Perillo* v. *Zunino* (259 N. Y. 21, 25), in which CRANE, J., stated: " The plaintiff's certificate, at the face value of $2,770, would, of course, be worth the aliquot part of the value of this third mortgage."

If the appellant is entitled to share in the proceeds of the collateral on a retained interest, it is equally entitled to share in a part sold and repurchased for value, regardless of whether it holds or cancels the certificate covering the part repurchased and if for reasons equitable or otherwise, it is not entitled by reason of interest retained to share in such proceeds as against those to whom it has sold an

interest in the security, it could not by the sale and repurchase of a part of the interest so sold, acquire as against other holders of certificates a right which it would not have had had it retained that part.

The question here is, first, whether the owner of the mortgages, which assigned a part of them, thereby postponed its interest to that of its assignees as a matter of law, and, if not, whether, under the facts of the particular case, it is equitably not entitled to enforce its legal claim before full satisfaction of the interest of its vendees.

Under the decisions in this State, it appears well established that the owner of a mortgage who assigns a part of it does not, as a matter of law, in the absence of an agreement to the contrary, postpone his interest to that of his assignee.

In *Granger* v. *Crouch* (86 N. Y. 494, 498) the defendants sold to one Purdy, for a consideration of about $13,000, certain real property on contract, providing for conveyance to the vendors of certain other real estate, the giving of a bond and mortgage on the property purchased for $6,500 and payment of the balance of about $3,200 in cash. Upon the closing of the contract, the arrangement was modified by substituting for the cash payment two notes and another bond and mortgage upon the same property. The two mortgages were recorded at the same moment. No agreement for priority was found. When the notes came due, Purdy could not pay. He borrowed of plaintiff the amount and plaintiff, after ascertaining from the record that the two mortgages were concurrent liens, took an assignment of the smaller mortgage with other security furnished by Purdy. The situation is no different from what it would have been had the defendant held one mortgage and assigned a part of it to the plaintiff. Discussing the question as to which security, if either, had priority, this court said: " The decisive test in every case is the intention of the parties, either as actually expressed, or as derived from the natural equity of the situation."

The court there pointed out that in *Mechanics' Bank* v. *Bank of Niagara* (*supra*) both expressed intention and natural equity favored the assignee, and in *Stafford* v. *Van Rensselaer* (9 Cow. 316) clear evidence of intention and priority was present. The court reached the conclusion that the mortgages were concurrent, neither intended or understood to have any preference over the other and that the parties should share *pro rata* in the proceeds. The primary debtor there remained indebted, as in the instant case, and all that was involved was an assignment of a part of the debt from his original creditor to another. That is precisely the situation here. We consider the case authority for the applicability of the *pro rata* rule as between assignor and assignee of a part of a mortgage indebtedness.

While this court in *Fullerton* v. *National B. & F. Ins. Co.* (100 N. Y. 76, 80) said: " * * * the case may be regarded in the aspect most favorable to the appellants, as one where part only of a debt has been assigned, the assignor reserving the other part to itself. In such case it is obvious the parties must either share *pro rata* in the security, or one must have priority over the other. It seems most reasonable that in the absence of a plain declaration to the contrary, it should be applied first to the payment of that part of the debt which was assigned. (*Van Rensselaer* v. *Stafford*, Hopkins, 569; *Bryant* v. *Damon*, 6 Gray, 564.) Otherwise, since the mortgaged land was not sufficient to satisfy both, the assignor would gain priority over its *cestuis que trust*," the statement must be considered in the light of the facts which, as shown by the quotation, involved a trust relationship, a relationship, as a result of which, the assignor was equitably not entitled to enforce his legal claim before full satisfaction of the interest of the vendee. Later decisions have not lessened the effect of the decision in *Granger* v. *Crouch* (*supra*).

In *Orleans County Nat. Bank* v. *Moore* (112 N. Y. 543) it was held that where a mortgage is given to secure

various debtors and there is a foreclosure sale, the payment to the creditor not being voluntary but by operation of law, in the absence of directions given in the security, the proceeds are to be applied *pro rata*, each debt sharing in the fund without regard to priority of date or to the fact that for some of the debts the creditor holds other securities.

In *Perillo* v. *Zunino* (*supra*) a restaurant company gave to the defendant a bond and mortgage as security for the sum of $23,000. The defendant Zunino executed certificates of participation in the indebtedness, one of which he sold to plaintiff's assignor. Subsequently, he satisfied the mortgage, leaving the bond as the sole security. Plaintiff's security not having been satisfied, he commenced an action against Zunino and the court held that Zunino had no power to satisfy the mortgage; that upon an accounting, he might be charged with the resulting damages growing out of his breach of trust or required to hold the proceeds for the benefit of the plaintiff. The Appellate Division having granted judgment for the face value of the plaintiff's certificate and interest, this court modified the judgment, saying that the plaintiff's certificate at the face value of $2,770 would, of course, be worth the aliquot part of the value of the mortgage; that the plaintiff was not entitled to the amount of his certificate unless the mortgage was worth its face value. While it does not so appear in the reported decision of this case, it appears from the records and briefs that the defendant Zunino himself owned a substantial interest in the bond and mortgage.

That the intention of the parties, as evidenced by the agreement or relationship, has been held to vary this rule is also settled in this jurisdiction. (*Stafford* v. *Van Rensselaer, supra; Mechanics' Bank* v. *Bank of Niagara, supra.*)

The *pro rata* rule is not applicable where the equities of the situation require that one party be preferred over another as where a trust relationship or that of debtor

and creditor exists. (*Fullerton* v. *National B. & F. Ins. Co., supra; Mechanics' Bank* v. *Bank of Niagara, supra.*)

An examination of the authorities in other jurisdictions leaves doubt as to just where the weight of authority may rest as between the two rules, one requiring a preference to assignees of a part of a security, the other requiring *pro rata* distribution between an assignor and assignees. Many cases cited as authority for one or the other rule will be found to be based on facts indicating intention for or against preference which makes them of little aid. The States in which it has been asserted that the assignee takes priority are not in accord as to what is to be the basis of priority, in some it being held that assignees take preference according to the due date of the obligations and in others according to the date of the assignments. They are in accord only in holding that where there is an assignment of a part of a security, it is an assignment *pro tanto*.

Text writers likewise differ widely in their interpretations as to the weight of authority.

Perhaps the trend of legal thought on the question may be indicated in the following statement from the Restatement of the Law of Trusts, American Law Institute (Vol. 1, pp. 57 and 58): " If a partial assignment of a chose in action is made, the assignor does not become trustee for the assignee. * * * There is a fiduciary relation between trustee and beneficiary. In the case of a partial assignment, as in the case of a total assignment, there is not a fiduciary relation between the assignor and the assignee."

If there be no fiduciary relation, it is difficult to see how, on principle, priority should exist in favor of an assignee where no contract therefor has been made between the parties and the relation of debtor and creditor does not exist. We see no good reason, in the absence of special equities, for establishing an arbitrary rule that the vendee of a part of a security takes priority over the vendor.

The difficulty, it seems to us, is not in stating the rule in the absence of special equities or expressed intent,

but rather in determining what contractual provisions evidence an intent or the existence of special equities sufficient to warrant a determination that the vendee of part shall be entitled to preference over his vendor in the proceeds of a particular equity.

Nothing in the certificates here under consideration warranted a belief on the part of the vendees that the vendor itself intended to assume any direct obligation to the vendees. The certificates reserve to the vendor the right to hold shares in the bond and mortgage and reserve the right to cancel the certificates upon payment of the amount owing for principal and interest. There is no ambiguity in the agreement. Neither is there any evidence of representations as to the value of the security or the purpose of the vendor to assume an obligation beyond that expressed in the certificates. If priority were to be decreed in favor of the certificate holders other than the appellant, it would have to be based upon an equity founded upon something outside of the contract itself, and there is nothing in the agreed statement of facts to constitute a basis for finding such an equity in favor of the certificate holders. The statement of facts agreed upon by the parties is conclusive and binding upon this court, and we cannot go outside of that statement in reaching a decision. (*New York Tel. Co.* v. *Siegel-Cooper Co.*, 202 N. Y. 502.)

We are unable to agree with the conclusion of the court below that from the facts before us the natural equities of the situation are all with the respondent.

There is nothing in the record to indicate knowledge on the part of the appellant that the guaranty which it procured from the Bond and Mortgage Guarantee Company was not good at the time it was given or believed by the appellant to be good. There was no misrepresentation as to the identity of the guarantor. The court below assumes that the buyers were entirely without knowledge as to the adequacy of the guaranty and also that the seller was chargeable with full knowledge.

The facts submitted do not warrant any such assumption of fact. There is here a controlling principle of law not applicable where the issuing corporation itself guarantees the obligation, and what has been said by the courts of this State as to the preference to which holders of similar certificates so guaranteed are entitled is not applicable, under the facts of this case.

The situation here presented has been considered at length in *Domeyer* v. *O'Connell* (364 Ill. 467, 480). The court there said: "We are of the opinion that neither logically nor equitably can it be said that an assignee who purchases what he must be held to know is but a part of the mortgage debt is entitled to have his note paid in full out of an insufficient security merely because of the assignment, without more. The logical and equitable principles which should control in a situation where, as here, all notes mature on the same day, bring us to the conviction that assignees and the mortgagee should share *pro rata* in the proceeds of insufficient security."

There the court was dealing with mortgage notes not guaranteed. Procurement by the mortgagee of a guaranty to itself and certificate holders of payment of principal and interest of the original obligation does not of itself impose on the mortgagee an increased burden. True it is that the guaranty may make certificates of participation in the mortgage more attractive to investors, but they have, so far as the agreed statement of facts discloses, the same opportunity as had the mortgagee to satisfy themselves of the adequacy of the guaranty, and they cannot neglect to inquire into that situation and then claim priority over the mortgagee, and assignor, in the event the guaranty proves inadequate.

We believe that in this State the courts are committed to the proposition that in the absence of an agreement or proven intent to the contrary, the existence of a trust relationship or proof of some equitable reason why priority should exist in favor of an assignee, the assignor of part of a mortgaged indebtedness who has not assumed

a liability as guarantor is entitled to share *pro rata* with his assignee in the proceeds of insufficient security. Such rule we approve and find applicable to the facts as presented in the agreed statement upon which this action is submitted.

The order and judgment of the Appellate Division should be reversed and judgment directed for the plaintiff, with costs in all courts.

CRANE, Ch. J., O'BRIEN, LOUGHRAN and RIPPEY, JJ., concur; LEHMAN and FINCH, JJ., taking no part.

Judgment accordingly.